CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 27 2008

JOHN F. CORCORAN, CLERK
BY: /s/ 
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LAWRENCE JOHNSON, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:08-cv-00022 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| TERRY O'BRIEN, et. al., | ) | By: Hon. James C. Turk |
|     Defendants. | ) | Senior United States District Judge |

Plaintiff Lawrence Johnson, a Virginia inmate proceeding pro se, brings this civil rights action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), with jurisdiction vested under 28 U.S.C. § 1331. In his complaint, Johnson alleges that the defendants, federal prison officials, used excessive force against him, denied him adequate medical treatment, and were deliberately indifferent to various hazardous living conditions, in violation of the Eighth Amendment. The court conditionally filed his complaint and granted him an opportunity to amend his complaint to particularize his complaint. Upon review of the complaint as amended, the court finds that while one groups of his claims may go forward, the remainder of his claims must be dismissed, pursuant to 28 U.S.C. §1915A(b)(1), for failure to state a claim upon which relief may be granted.[1]

I

Johnson's claims are based on the following alleged sequence of events at the United States Penitentiary in Lee County, Virginia ("USP Lee").[2] On June 26, 2007, Johnson complained to Officer Taylor about "being placed in a [segregation unit] cell in which the toilet and floor [were] covered with human excrement." He asked Taylor to flush his toilet, but the officer refused.

---

[1] A complaint filed by an inmate challenging the conduct of an "officer or employee of a governmental entity" may be dismissed under §1915A(b)(1) if the complaint is "frivolous, malicious or fails to state a claim upon which relief may be granted."

[2] Johnson states that he was incarcerated at USP Lee from 2002 until October 2007; he is now incarcerated at the United States Penitentiary in Terre Haute, Indiana. Johnson's allegations are not set forth in a comprehensive narrative in any one document he has submitted. The allegations summarized here by the court are compiled from the varying descriptions Johnson has made regarding the incidents in question in the various documents he has submitted in this case.

1

Johnson then asked for cleaning supplies and disinfectant, and the officer refused again. Johnson began kicking his cell door. Lieutenant Trees came to Johnson's cell, but left without acting on Johnson's complaints. So, Johnson activated the sprinkler in the cell in order to force officers to move him to a clean cell.

Johnson told Capt. Wilson that he would submit to restraints to be moved. Lt. Trees nevertheless called for the use of a force team, who cuffed Johnson, moved him to a dry cell. Once there, Johnson alleges, "Lt. Trees had me stripped by four officers and watched by at least five other officers and an inmate. Four officers one on each arm and each leg had me out stretched and Lt. Trees told them to bend me at the waist while he stood directly behind me while I was naked."[3] The officers then shackled Johnson, put a belly chain and a black box on him and left him for "at least six hours." The cell smelled of feces and urine and had no bed, toilet, running water, or articles of personal hygiene. He remained in the cell under these conditions for at least three days, during which he was forced to urinate and have bowel movements in a plastic bag. As a result of this incident, he suffered a muscle strain in the left side of his lower back and swollen wrists from the tight cuffs and the black box.

Johnson filed a complaint against Lt. Trees and reported Officer Taylor's conduct.[4] Capt. Wilson told him that if he would "resolve" the complaint informally, he would be returned to the general population, but Johnson refused. As a result, Johnson alleges, various officers committed retaliatory acts against him, including finding him guilty of charges that should have been expunged, issuing "bias[ed] and inconsistent UDC and DHO decisions," transferring him "more than 900 miles away from home, stealing property belonging to plaintiff, [and] writing false incident reports.[5]

---

[3]Johnson alleges that he filed administrative complaints about this incident, accusing Trees and Taylor of "Sexual Abuse, Cruel and Unusual Punishment, and retaliation."

[4]Johnson filed a complaint with the Bureau of Prisons about being placed in an unsanitary cell, but was denied any administrative settlement under the Federal Tort Claims Act on September 13, 2007. See Dkt. No. 7, Exhibit J.

[5]Johnson claims that the initial disciplinary report for the sprinkler incident recommended only restitution. When the charge was rewritten (after Johnson filed complaints about his treatment),

Taylor put Johnson on "bag lunch status" for five days[6] and "had numerous other officers deny" him his "regular meal" during that time. Johnson allegedly did not eat for the whole five days and suffered dizziness, "throwing up yellow mucus, shrunkin [sic] stomach."

On September 21, 2007, while Johnson was in the non-contact visitation booth with his wife, Officer Taylor opened the door and watched them for about thirty seconds before declaring that their visit was terminated. Johnson walked to the toilet to urinate, and Taylor grabbed him behind his neck and left shoulder, ramming his head twice against the concrete wall. Taylor and Officer Welch then began striking Johnson in the back and ribs "with what felt like closed fists and only stopped when Officer W. O'Quinn told them to stop. Taylor then placed restraints on Johnson's wrists so tightly that his right hand began to swell and he could not feel his fingers. Taylor walked Johnson to the Special Housing Unit and placed him in the recreation yard for twenty minutes, still in the restraints.

As a result of the alleged assault by Taylor and Welch, Johnson suffered a swollen forehead, sore ribs, lower back pain, a swollen wrist, occasional headaches, and "urinating blood." Johnson allegedly told Nurse A. Bishop that he had been assaulted by Taylor and Welch and "needed immediate medical attention." Thirty minutes later, the nurse came to Johnson's cell.[7] He told her of "all of his injuries," but she did not take him out of his cell to evaluate his condition and no one provided him with pain medication.

---

the report recommended transfer and restitution. The hearing officer imposed several penalties: "15 days D/S," loss of telephone privileges for 90 days, and a disciplinary transfer recommendation. On a charge of being out of bounds, Johnson was sanctioned 90 days loss of contact visiting, 90 days loss of commissary privileges, and "15 days D/S."

[6]According to Johnson, a bag lunch consists of four slices of bread, one ounce of peanut butter, and two jelly packages.

[7]In his motion to amend, Johnson seeks discovery of all video footage and all reports or memos related to the investigation of the incident, along with "impeachment evidence" from the personnel files of the officers involved. He is hereby advised that his discovery requests are premature. Once defendants have been served process and have responded to the complaint, he may submit a motion to engage in discovery and make specific discovery requests to specific defendants, pursuant to the Federal Rules of Civil Procedure.

Johnson claims that other retaliatory acts stemmed from this incident,[8] that his wife was denied entry into the institution on other occasions as well, and when she was allowed to visit, she was "intentionally harassed." On September 23, 2007, Defendant Malika denied Johnson his visiting privileges because of the September 21 incident.[9]

Based on these allegations as amended, Johnson says he wishes to bring claims of excessive force, negligent supervision, deprivation of liberty without due process, cruel and unusual conditions, refusal of medical care, denial of food for five days, failure to protect, retaliation for pursuing administrative remedies, interference with his ability to pursue administrative remedies, and related state law claims.

II

In Bivens, the Supreme Court held that damage suits could be maintained against federal officials for violations of the Constitution. 403 U.S. at 392. An action under Bivens is almost identical to an action under 42 U.S.C. §1983, except that the former is maintained against federal officials for violation of constitutional rights while the latter is against state officials. See Carlson v. Green, 446 U.S. 14, 2425 (1980); Butz v. Economou, 438 U.S. 478, 504 (1978). Case law involving § 1983 claims is applicable in Bivens actions and vice versa. See Farmer v. Brennan, 511

---

[8]Johnson asserts in an affidavit (Dkt. No. 13) that in retaliation, after the September 21, 2007, incident, Officer Taylor charged Johnson with at least six infractions, most of which were unfounded, and lied on the incident report.

[9]To the extent that Johnson seeks to raise claims concerning this alleged denial of visitation, he has no actionable claim. Neither prisoners nor would-be visitors have any constitutional right to prison visitation. White v. Keller, 438 F. Supp. 110 (D. Md. 1977), aff'd, 588 F.2d 913 (4th Cir. 1978). See also Caraballo-Sandoval v. Honsted, 35 F.3d 521, 525 (11th Cir.1994) (finding that Bureau of Prisons's visiting regulations do not create a protected interest in visitation at all, much less visitation with a specific person). Moreover, Johnson may not bring any claim on behalf of his wife. See Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 166 (1972) (a litigant "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others"). Thus, all claims concerning visitation privileges or alleged harassment of Johnson's wife will be dismissed, pursuant to § 1915A.

U.S. 825 (1994); Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); Turner v. Dammon, 848 F.2d 440, 443-44 (4th Cir.1988).

**A. Excessive Force and Cruel Conditions**

The Eighth Amendment prohibits prison officials from using force unnecessarily and wantonly to inflict pain on inmates. Whitley v. Albers, 475 U.S. 312, 319 (1986). A claim that guards used excessive force against an inmate requires a dual inquiry: (1) the objective nature of the force used and the resulting harm and (2) the subjective intent of the officers. Hudson v. McMillian, 503 U.S. 1, 7 (1992). The key inquiry under the subjective prong of this test is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 8. In making this determination, the court must balance such factors as the need for the application of force, the relationship between the need and the amount of force actually applied, and the extent of injury inflicted. Id. at 7.

"Not every push or shove" violates a person's constitutional rights, Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). De minimis injury can be conclusive evidence that the force used was also de minimis and, therefore, not violative of constitutional protections. See Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994). Thus, absent the most extraordinary circumstances, an inmate cannot prevail on an excessive force claim unless he proves more than de minimis pain or injury. Id. Nevertheless, an inmate with only de minimis injury may recover damages under Bivens if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Orem v. Rephann, ___F.3d___, 2008 WL 1850794, No. 07-1696, *4 (4th Cir. April 28, 2008) (finding that plaintiff alleged more than de minimis injury from being tased two times for a few seconds each time and suffering small scar) (quoting Norman, 25 F.3d at n. 4).

The Eighth Amendment protects prisoners from cruel and unusual living conditions that are "totally without penological justification." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). In order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts

demonstrating that the challenged conditions resulted in a deprivation of a basic human need that was objectively "sufficiently serious" and (2) that, subjectively, the defendant prison officials acted with a sufficiently "culpable state of mind" with regard to the conditions. Wilson v. Seiter, 501 U.S. 294, 298 (1991). To satisfy the objective element of a conditions claim, the plaintiff must show that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993).

Allegations of inadequate prison food service may be sufficient to state a cognizable claim under §1983, so long as the deprivation is serious. Bolding v. Holshouser, 575 F.2d 461, 465 (4th Cir. 1978); French v. Onion, 777 F.2d 1250, 1255 (7th Cir. 1985) (finding that inmates are entitled to receive nutritionally adequate food). On the other hand, occasional, short-lived problems with prison food service and isolated instances of inmates missing a meal or two do not implicate the Eighth Amendment. See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); Islam v. Jackson, 782 F. Supp. 1111, 1114 (E.D. Va. 1992) (finding that inmate's missing one meal as isolated event did not state Eighth Amendment violation). See also Alexander v. Tippah County, Miss., 351 F.3d 626, 631 (5th Cir.2003) (stating that any injury incurred from vomiting and nausea, which was not so severe as to require medical intervention or have lasting health effects, was de minimis).

In Bell v. Wolfish, 441 U.S. 520, 558 (1979), the Supreme Court held that inmates may be subjected to body cavity searches even in the absence of probable cause so long as the searches were reasonable. The Court framed the test for reasonableness as follows,

> In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it and the place in which it is conducted.

Bell, 441 U.S. at 559. An inmate has extremely limited expectations of privacy, particularly in the presence of others of the same gender. See Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981).

6

### 1. June 26, 2007: Ambulatory Restraints

Johnson's allegations as amended simply do not give rise to any constitutional claims. Johnson admits that he activated the sprinkler in his cell because he wanted to be moved to a cell with a flush handle on the toilet. Contrary to his apparent misunderstanding, prisoners cannot, without consequence, use disruptive behavior to achieve a change in conditions. In light of this destructive and defiant action, the court cannot find that officials' use of full restraints, waist chain, and black box for six hours was disproportionate to the need to restore order. In such restraints, Johnson was unable to destroy any additional government property. Placing him for several days in a cell that contained no furniture was also a proportionate response to his attempt to manipulate officials through his disruptive acts.

Of course, leaving the restraints too tight, even for six hours, might satisfy the "subjective" aspect of Johnson's excessive force claim, except that the minimal injuries he allegedly suffered are conclusive evidence that the force was not maliciously applied on June 26, 2007. Johnson's allegations as amended simply do not support a finding that the use of restraints and the few days in the stripped cell caused him more than de minimis pain or injuries. Even after being specifically instructed by the court to particularize his allegations concerning the extent of his injuries, at the most, he alleges suffering a muscle strain in the left side of his lower back and swollen wrists as a result of the ambulatory restraints. He does not indicate that these injuries affected him for more than a few hours or that he sought or needed medical treatment for them. Such minimal, temporary injuries are conclusive evidence that the force used was also minimal and, therefore, not "an impermissible infliction of pain" in violation of the Eighth Amendment. Orem at *4.

Johnson alleges vaguely that defendants were acting "under color of state law" when they restrained him and that they were "negligent"--- in failing to remove the restraints sooner when he showed no further signs of aggression, in "provoking the attack," and in failing to separate him from Officer Taylor, thus causing him foreseeable injury. Mere negligence by prison officials does not state any claim of constitutional significance, however. See Daniels v. Williams, 474 U.S. 327

(1986). Moreover, even after amending his complaint, Johnson fails to set forth any specific "supplemental state law claims." The court will therefore dismiss his conclusory claims of negligence and his unspecified state law claims without prejudice, pursuant to § 1915A(b)(1) and 28 U.S.C. § 1367(c).[10]

### 2. June 2007: The Stripped Cell

Similarly, Johnson's allegations regarding his few days in the stripped cell itself do not state any constitutionally significant claim of deliberate indifference. He was not entirely deprived of food and water or bathroom facilities, even if the food and facilities provided were not as he would have wished or would have received in other units of the prison. While the restraints and cell conditions were unquestionably harsh, they were temporary. Most importantly, he does not allege suffering any serious or significant physical injury from being subjected to the stripped cell conditions for a few days. Similarly, he alleges no serious or significant injuries resulting from deprivation of regular meals for the five days when he received only a bag lunch or from the vomiting that allegedly resulted.[11] Alexander, 351 F.3d at 631. Therefore, the court cannot find that Johnson's allegations state any Eighth Amendment claim of deliberate indifference.

### 3. June 26, 2007: Sexual Assault

Although Johnson refers to the strip search portion of the June 26 incident as "sexual assault," his allegations as amended fail to state any such claim. The sequence of events that he describes is nothing more than a visual strip search in the presence of other male officers and a male inmate. The Supreme Court in Bell upheld the constitutionality of a prison procedure requiring

---

[10]Because the defendants are federal prison officials, they were not acting under "color of state law," as Johnson alleges (emphasis added). Moreover, the court has already considered and dismissed his claims that prison officials took intentional acts under color of law so as to make them subject to Bivens claims.

[11]Johnson alleges that he did not eat anything for the five days when he received only bag lunches. By his own allegations, however, the bag lunches contained nutritious food that would have sustained him if he had chosen to eat it. Defendants cannot be held liable for Johnson's personal decision to forego eating the bag lunches in protest of this disciplinary measure.

every inmate to undergo a visual strip search of his body cavities after every contact visit.[12] 441 U.S. at 558. Given Johnson's recent defiant behavior, Lt. Trees was certainly justified in taking reasonable measures to ensure that the inmate did not bring any objects into the stripped cell with which to harm himself, others, or property. Johnson does not allege any specific facts indicating that the strip search was unreasonable or unwarranted. The court finds no constitutional claim arising from the visual strip search that Johnson narrates. For the stated reasons, the court will dismiss all Eighth Amendment claims arising from the June 26, 2007, incident and Johnson's subsequent stay in the stripped cell.[13]

### 4. September 21, 2007: The Visiting Room Incident

Taking Johnson's allegations in the light most favorable to him, the court finds that his allegations as amended state a possible claim of excessive force arising from this incident. Specifically he alleges that Taylor and Welch "beat" him with their fists although he had not violated any prison disciplinary rule and posed no immediate threat to security or order. Johnson also alleges that from this attack, he suffered injuries–a swollen forehead, sore ribs and back, a swollen wrist, occasional headaches–and that he "was urinating blood." While Johnson will clearly be required to provide evidence that these injuries were severe enough to qualify as "more than de minimis," the court cannot find at this stage of the litigation that he could not do so. Accordingly, the court will allow the visiting room excessive force claim to go forward against Officers Taylor and Welch.

As to the other officers named to this claim, however, the court finds that Johnson's allegations fail to implicate any constitutional rights. He admits that Officer O'Quinn yelled at the

---

[12]The procedures approved in Bell were very similar to the procedure Johnson describes: "If the inmate is a male, he must lift his genitals and bend over to spread his buttocks for visual inspection. . . . The inmate is not touched by security personal at any time during the visual search procedure." 441 U.S. at 558 n. 39.

[13]In addition to the officers who were personally involved in placing him in the ambulatory restraints and the stripped cell, Johnson sues supervisory personnel for allowing the alleged violations. As the court finds no constitutional violations, however, the supervisors named cannot be held liable for any role they allegedly played in the incidents. Belcher v. Oliver, 898 F.2d 32, 36 (4th Cir.1990) (finding that a § 1983 claim against officers' superiors "is unavailing where there has been no underlying constitutional infraction").

other officers to stop the beating and does not allege any other respect in which this officer participated in the alleged assault. He also does not allege facts indicating that any supervisory officers were present or knew of, encouraged, or in any way approved of the actions Taylor and Welch allegedly took against Johnson. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir.1999) (finding that supervisory official may be liable for acts of subordinates only if personally involved in some specific respect with the violation). Accordingly, all claims against officers other than Taylor and Welch, related to the visiting room incident, will be dismissed, pursuant to § 1915A(b)(1).

**B. Due Process**

A prisoner has no constitutionally protected liberty interest in remaining in a particular housing assignment. See Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Confinement does not strip the inmate of all of his liberty interests, however. Id.

> These interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Sandin v. Conner, 515 U.S. 472, 484 (1995); Ajaj v. Smith, No. 03-7874, 108 Fed. Appx. 743, *1, 2004 WL 1663968 (4th Cir. 2004) (finding Bivens claim of due process denial was properly dismissed under Sandin) (unpublished). Changes "in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston, 946 F.2d at 343.

Johnson alleges that conditions in ambulatory restraints and in the stripped cell were quite different from those he enjoyed in the general population or in his normal SHU cell. He alleges six days of unsanitary conditions, urinating and defecating in a plastic bag instead of a toilet, no sink, bag lunches, while clad only in a t-shirt and boxer shorts. However, the United States Court of Appeals for the Fourth Circuit has held that confining segregation inmates for more than six months in conditions much worse than those Johnson alleges was insufficient to trigger any federal due

process right to avoid such conditions. Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997). The Beverati segregation inmates complained of no outside recreation, no clean clothes, less food, and cells infested with vermin and smeared with urine and feces. Id. Balancing these factors, the court cannot find that the stripped cell conditions of which Johnson complains were atypical enough to state any federal due process claim. Therefore, the court will dismiss all due process claims related to his complaints about ambulatory restraints and living conditions, pursuant to § 1915A(b)(1).

Johnson also asserts that his substantive due process rights were implicated by the alleged excessive force and supervisory officials' "negligence" in failing to protect him from the alleged assault by subordinates on September 21, 2007. It is well established, however, that after conviction, the Eighth Amendment "serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified." Whitley, 475 U.S. at 327. Any protection that "substantive due process" affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment." Id. Johnson was a convicted felon at the time of the challenged use of force. Thus, the court finds it appropriate to consider his remaining excessive force claim exclusively under the Eighth Amendment and will dismiss his due process claims related to both of the alleged excessive force incidents.

## C. Denial of Medical Care

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). A constitutional claim in this context involves an objective component and a subjective component. The objective component is met if the deprivation is "sufficiently serious." Farmer, 511 U.S. at 834. A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999); Sheldon v. C/O Pezley, 49 F.3d 1312, 1316 (8th Cir. 1995). The subjective component is met if a prison official is "deliberately indifferent," that is if he "knows of and disregards an excessive risk to inmate health or safety."

Farmer, 511 U.S. at 837; Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998). A claim concerning a disagreement between an inmate and medical personnel regarding diagnosis and course of treatment does not implicate the Eighth Amendment except in extraordinary circumstances. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Nonmedical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment for an inmate's injuries. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990).

Johnson alleges that immediately after the September 2007 assault by Officers Taylor and Welch, he asked A. Bishop for medical care and she refused to provide any.[14] As the court has noted, Johnson may be able to demonstrate that the injuries he suffered in the September 2007 incident were more than de minimis. If so, he may also be able to demonstrate that one or more of the conditions arising from his injuries constituted a serious medical need and that Bishop's failure to provide any treatment constituted deliberate indifference to such need. Accordingly, the court will allow Johnson's medical claim against Nurse Bishop to survive screening under § 1915A(b)(1).

**D. Retaliation for Grievances**

Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994) . To succeed on his claim, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. The inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident . . . would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995). "Temporal proximity" between the inmate's protected activity and the allegedly retaliatory, official action "is simply too slender a reed on which to rest" a § 1983 retaliation claim. Wagner v. Wheeler,

---

[14]Johnson does not allege facts indicating that he requested medical treatment after the June 2007 incidents involving ambulatory restraints and stripped cell conditions.

12

13 F.3d 86, 91 (4th Cir. 1993). Plaintiff must also demonstrate that he suffered some adverse impact or actual injury, more than mere inconvenience, to the exercise of his constitutional right. ACLU of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir.1993). Complaints that offer nothing more than conclusory allegations of retaliation may be summarily dismissed. Adams, 40 F.3d at 74. Inmates have no constitutional right to a prison grievance procedure. Id. at 75.

Johnson's allegations fail to state any claim of retaliation under these principles. The court specifically advised him that he would need to amend his allegations to state the facts on which he based his claims that certain actions against him were taken in retaliation. He states merely that various undesirable actions occurred after each of the alleged excessive force incidents, including false disciplinary charges, a transfer further away from home, no regular meals for a few days, stolen property, and deprivation of visiting privileges. At the most, Johnson alleges, in conclusory fashion, that these adverse events occurred after he filed grievances about the excessive force incidents. In filing grievances, however, Johnson was not exercising a constitutionally protected right, as he has no right to participate in a grievance procedure at all. Moreover, he does not allege any specific facts, other than closeness in time, that would tie the adverse, later events to a retaliatory motive. His conclusory allegations of retaliation must, therefore, be summarily dismissed, pursuant to § 1915A(b)(1).

Similarly, because Johnson has no constitutional right to a prison grievance procedure, his allegations that prison officials interfered with his ability to exhaust his grievance remedies does not state any separate constitutional claim actionable under Bivens. Thus, his claims concerning interference with exhaustion of grievance remedies will be dismissed, pursuant to § 1915A(b)(1).[15]

---

[15]While Johnson's allegations about his troubles in completing the administrative remedies procedures does not state a constitutional claim, these allegations are relevant to any argument that he failed to exhaust available administrative remedies before filing this civil action. See 42 U.S.C. § 1997e(a). Because of Johnson alleges that he attempted to exhaust administrative remedies as to all of his claims, but was frustrated in doing so by the actions of prison officials, the court will not dismiss this complaint or any part of it under 42 U.S.C. § 1997e(a). However, that fact does not bar defendants from presenting evidence of non-exhaustion and moving for summary judgment under § 1997e(a) if they can demonstrate that no genuine issue of material fact remains in dispute. See Jones v. Bock, 127 S. Ct. 910, 921 (2007) (finding that plaintiff's failure to exhaust administrative

IV

In conclusion, the court finds that all of Johnson's claims under <u>Bivens</u> as amended must be dismissed, pursuant to § 1915A(b)(1), except the following alleged violations of the Eighth Amendment:

a.  use of excessive force by Officers Taylor and Welch on September 21, 2007; and

b.  deliberate indifference to serious medical need on September 21, 2007, by Nurse A. Bishop.

By separate order, the court will direct the clerk to attempt service of process on these three defendants at USP Lee County as to these two remaining claims.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This __ day of May, 2008.

_____
Senior United States District Judge

---

remedies under § 1997e(a) is an affirmative defense that must be raised and pled by the defendant).