IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LAWRENCE JOHNSON, | Civil Action No. 7:08cv00022 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| TIMOTHY TAYLOR, WILLIAM WELCH, AMANDA BISHOP a/k/a AMANDA RUTHERFORD, | |
| Defendants. | By: Hon. James C. Turk<br>Senior United States District Judge |

Plaintiff Lawrence Johnson, a federal inmate proceeding pro se, brings this civil rights action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), with jurisdiction vested under 28 U.S.C. § 1331. The court previously dismissed certain of Johnson's claims for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1). Still remaining before the court are Johnson's claims that Officers Timothy Taylor and William Welch used excessive force against him on September 21, 2007, and that Nurse Amanda Rutherford[1] was deliberately indifferent to Johnson's serious medical need that day, all in violation of the Eighth Amendment. The defendants filed a motion for summary judgment,[2] and Johnson an opposition brief, making the matter ripe for decision. Upon review of the record, the court finds that the defendants' motion for summary judgment must be

---

[1] Amanda Rutherford was previously known as Amanda Bishop. (Rutherford Decl., ¶ 2, Ex. 2 to Mot. for Summ. J., Dkt. No. 40).

[2] The defendants' motion was titled as a motion to dismiss or in the alternative motion for summary judgment. Because defendants attached a number of exhibits to their motion, the court will construe the motion as one for summary judgment. In addition, the parties received reasonable and explicit notice of this possibility. The Clerk of the Court issued a Roseboro Notice on August 1, 2008, explaining that "if documents or affidavits outside the pleadings are submitted by either party, any remaining motion(s) to dismiss under Rule 12(b)(6) of the Federal Rules of Federal Civil Procedure may be considered as motion(s) for summary judgment under Rule 56 of the Federal Rules of Federal Civil Procedure." (Dkt. No. 41).

granted, and this action dismissed without prejudice, as Johnson failed to exhaust his available administrative remedies before filing suit.

## I.

Johnson's remaining claims are based on the following alleged sequence of events at the United States Penitentiary in Lee County, Virginia ("USP Lee County").³ On September 21, 2007 at 8:10 p.m., Johnson was in the non-contact visitation booth with his wife. (Amended Complaint, (hereinafter "Complaint") ¶ 45, Dkt. No. 9). Officer Taylor opened the door and watched them for about thirty seconds before declaring that the visit was terminated. (Id.). Johnson walked to the toilet to urinate, and while he was standing in front of the toilet, Taylor grabbed him behind his neck and left shoulder, ramming his head twice against the concrete wall. (Id., ¶ 47). Taylor and Officer Welch then began striking Johnson in the back and ribs "with what felt like closed fists," and only ceased when Officer Wade O'Quinn told them to stop. (Id., ¶ 48). Taylor then placed restraints on Johnson's wrists so tightly that his right hand began to swell and he could not feel his fingers. (Id., ¶ 49). Next, Taylor walked Johnson to the Special Housing Unit and placed him in the recreation yard for twenty minutes, still in the restraints. (Id., ¶ 50).

Defendants Taylor and Welch present a starkly different picture of what transpired the night September 21, 2007. Taylor contends that he arrived at the visiting room at 8:15 p.m. to escort Johnson back to the Special Housing Unit, where Johnson resided. (Taylor Decl., ¶¶ 4-5, Ex. 3 to Mot. for Summ. J., Dkt. No. 40). Johnson responded in an agitated voice that he had five minutes left of the visit. (Id., ¶ 6). At approximately 8:20 p.m., and after several direct orders to stand up, Johnson approached Taylor in an aggressive manner, stating that he needed to

---

³ Because Johnson proceeds pro se, the court will construe his claims liberally. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

2

use the restroom. (Id., ¶ 7). Because inmates residing in the Special Housing Unit are required to be placed in hand restraints when transported within the prison, Taylor ordered Johnson to submit to hand restraints. (Id., ¶ 8). Johnson refused, instead brushing against Taylor with his shoulder as Johnson walked by. (Id., ¶ 9). Taylor again ordered Johnson to submit to hand restraints, which Johnson ignored. (Id., ¶¶ 10-11). According to defendants Taylor and Welch, as well as Officer Quinn, the three officers then placed Johnson against the wall and secured him with hand restraints. (Id., ¶¶ 12-13; Welch Decl., ¶¶ 9-10, Ex. 4 to Mot. for Summ. J.; O'Quinn Decl., ¶ 8-9, Ex. 5 to Mot. for Summ. J.). Taylor denies slamming Johnson's head against the wall, but acknowledges that his "head may have hit the wall during the struggle, [though] it was not an intended result of the use of force." (Taylor Decl., ¶ 16-17. See also Welch Decl., ¶ 14; O'Quinn Decl., ¶ 12). Taylor, Welch, and O'Quinn all attest that the officers used an appropriate level of force and that Johnson was not punched in the back or and ribs by any officer. (Taylor Decl., ¶¶ 12, 14-16, 18, 20, 22; Welch Decl., ¶¶ 9, 11-14; O'Quinn Decl., ¶¶ 8, 10-12). O'Quinn also denies telling Taylor and Welch to stop any wrongful physical contact. (O'Quinn Decl., ¶ 13). After securing Johnson with the hand restraints, Taylor then immediately escorted Johnson back to the Special Housing Unit. (Taylor Decl., ¶ 23).

As a result of the alleged excessive force employed by Taylor and Welch, Johnson claims that he suffered a swollen forehead, sore ribs, lower back pain, a swollen wrist, occasional headaches, shortness of breath requiring an asthma pump, and has urinated blood. (Complaint, ¶ 60; Opp. Br. at 5, Dkt. No. 49). Johnson allegedly told Nurse Rutherford that he had been assaulted by Taylor and Welch and "needed immediate medical attention." (Complaint, ¶ 51). According to Johnson, Rutherford ignored his request, but returned to his cell thirty minutes later. (Id., ¶¶ 52-53). Johnson claims that he then told Rutherford about all of his injuries, but

3

she did not take him out of his cell to evaluate his condition and did not provide him with pain medication. (Id., ¶¶ 53-54).

Nurse Rutherford agrees that she evaluated Johnson through his cell door, but otherwise diverges from Johnson's account. According to Rutherford, Johnson only complained of pain in his right wrist, and that there was a small red area on that wrist where the hand restraints had been. (Rutherford Decl., ¶¶ 8, 10). Rutherford also observed a one centimeter raised round area on Johnson's forehead. (Id., ¶ 11). Rutherford noted these injuries on an inmate injury assessment form, provided Johnson with a packet of ibuprofen, and instructed him to follow up with medical staff as needed. (Id., ¶¶ 12, 14-15; Sep. 21, 2007 Inmate Assessment, Ex. 2, Attach. A to Mot. for Summ. J.). In addition, Rutherford reviewed Johnson's medical records from the date of the incident until summer 2008. (Rutherford Decl., ¶ 16). She found that Johnson did not seek any medical attention after the September 21, 2007 incident until November 13, 2007 when he submitted a request at United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute")[4] to have his teeth cleaned. (Id., ¶ 17).[5] On December 7, 2007, Johnson complained of rib pain, but x-rays taken a week later were normal. (Id., ¶¶ 18-19).[6] Rutherford also states that Johnson was medically evaluated "several times prior to December 7, 2007, [but] did not complain of any rib or back pain." (Id., ¶ 20). On January 15, 2008 Johnson complained of ailments including lower back pain, and on March 18, 2008 Johnson complained of left rib pain over the preceding three months. (Id., ¶¶ 22-23).

---

[4] Johnson was transferred from USP Lee County to USP Terre Haute sometime in fall 2007 after the September 21 incident.

[5] For his part, Johnson contends that after September 21, 2007, other prison officers denied his requests for medical attention. (Complaint, ¶ 55-56).

[6] Though not seeking treatment until December 7, 2007, Johnson did report the alleged September 21, 2007 assault and his injuries during his transit to USP Terre Haute.

4

In his Verified Statement (Dkt. No. 7), Johnson claims that he had "attempted to exhaust [his] administrative remedies and [] was denied [his] right to that process because Lee County refused." Johnson also contends that prison officials intentionally thwarted his "reasonable and good faith efforts" to engage in the administrative grievance process, and that he "gave defendants 'an opportunity to correct [their] own acts of misconduct' . . . internally." (Mar. 10, 2008 Johnson Decl., ¶¶ 3, 5-6, Dkt. No. 13).

In their motion for summary judgment, defendants argue that Johnson's "administrative remedy history clearly shows [that] he had access to the administrative remedy program and that his administrative remedies were responded to when [he] followed the established administrative remedy procedures." (Mot. for Summ. J. at 6). In support, defendants attach Johnson's SENTRY (the Bureau of Prisons' computerized record system) administrative remedy history as of July 7, 2008, as well as a declaration from paralegal Sharon Wahl. (See Ex. 1 & Attach. A to Mot. for Summ. J.). The SENTRY records indicate that Johnson had filed over 100 administrative remedies during his incarceration, with over 50 of these remedies pertaining to complaints about USP Lee County. (Wahl Decl., ¶¶ 8-9). Out of all of these remedies filed, Johnson has only fully exhausted five. (Id., ¶ 10). In the six-month period surrounding September 21, 2007 (July 2007 through December 2007), SENTRY records show that Johnson "filed 16 administrative remedies, 10 of which were answered, and 6 of which were rejected based on [his] failure to follow the administrative remedy procedures."[7] (Id., ¶ 12).

Specifically with respect to the September 21, 2007 incident, defendants assert that the SENTRY records do not indicate that an administrative remedy was ever filed at the first level of

---

[7] If an administrative remedy is rejected, a copy is not retained by the Bureau of Prisons. Rather, the SENTRY records reflect that the remedy was filed and rejected, and log the reason for the rejection as well as the date of filing. (Wahl Decl., ¶¶ 6-7).

formal review.[8] In his opposition brief, Johnson for the first time claims that he "did in fact exhaust all available administrative remedies," and submits a number of exhibits in support. (Opp. Br. at 3). These exhibits indicate that on September 24, 2007, Johnson submitted Administrative Remedy No. 468431 regarding the incident, which was stamped as received on October 1, 2007. (See Ex. 1, Attach. A to Opp. Br.; SENTRY at 37). Johnson filed this remedy at the Regional Office level, and it was rejected on October 3, 2008 for not having first been sent to the institution level. (See Ex. 1, Attach. B to Opp. Br.; SENTRY at 37).

Johnson next referenced Administrative Remedy No. 468431 in an appeal to the Central Office dated March 2, 2008, which was stamped as received on March 10, 2008. (See Ex. 1, Attach. C to Opp. Br.; SENTRY at 45). In this appeal, Johnson claims that he has "tried to address this situation at all levels . . . to no avail," and that he never received a copy of prior submissions while housed in the Special Housing Unit despite his request. (See Ex. 1, Attachs. C & E to Opp. Br.). This appeal was rejected by the Central Office on March 12, 2008, again for not having first been submitted at the institution level. (See Ex. 1, Attach. D to Opp. Br.; SENTRY at 45).

The record indicates that Johnson also complained of the September 21, 2007 incident in Administrative Remedy No. 463813-R1 received on December 18, 2007 (dated December 10, 2007), a Regional Office appeal of an unrelated complaint originally filed August 22, 2007. (See Exs. 2A & 2B to Opp. Br.; Wahl Decl., ¶¶ 28-29).[9] This appeal was rejected for a number of reasons, among these that it was filed at the wrong Regional Office. (See Ex. 2C to Opp. Br.;

---

[8] Administrative remedies are processed through a three-level system. First is the institution level, where remedy numbers are identified by an "F." (Wahl Decl., ¶ 5). Second, the Regional Office level, identified by an "R." (Id.). Third, the Central Office level, identified by an "A." (Id.).

[9] In their motion to dismiss, the defendants incorrectly stated that Johnson first formally complained of the September 21, 2007 incident in this December 18, 2007 appeal. As explained above, Johnson first filed an administrative remedy mere days following the September 21, 2007 incident.

6

Wahl Decl., ¶ 30; SENTRY at 34).[10] Johnson then resubmitted Administrative Remedy No. 463813 to the correct Regional Office on January 9, 2008, but it was again rejected on January 10, 2008 for multiple reasons, including failure to verify the reason for the untimely appeal, as previously directed. (Exs. 2D & 2E to Opp. Br.; Wahl Decl., ¶ 32; SENTRY at 40). On March 2, 2008, Johnson then submitted this administrative remedy to the Central Office (stamped as received on March 10, 2008), claiming that he had "tried to address this situation at all levels . . . to no avail," and that he never received a copy of prior submissions while housed in the Special Housing Unit despite his request. (Ex. 2F to Opp. Br.; SENTRY at 45). This appeal was rejected for having been filed at the wrong level. (Ex. 2G to Opp. Br.; Wahl Decl., ¶ 33; SENTRY at 45).

Finally, though not including an official administrative remedy form, Johnson indicates that he also complained about the September 21, 2007 incident anew in spring 2008 through a quasi-declaration (Ex. 2, Attach. A to Opp. Br.). Administrative Remedy No. 488632 was responded to on April 24, 2008 at the institution level (Ex. 2, Attach. B to Opp. Br.), June 17, 2008 at the Regional Office level (Ex. 2, Attach. C to Opp. Br.), and September 2, 2008 at the Central Office level (Ex. 2, Attach. IA to Opp. Br.). Though the precise subject matter of Administrative Remedy No. 488632 is not specified on the responses, Johnson's submissions suggest that they were in response to his statement regarding the September 21, 2007 events.

## II.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[10] The defendants note that Administrative Remedy No. 463813-R1 was logged incorrectly as being received on August 22, 2007. (Mot. for Summ. J. at 11 n. 7). In fact, August 22, 2007 is the date that Administrative Remedy No. 463813-F1 was filed at the institution level. (Id.)

7

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

## III.

In Bivens, the Supreme Court held that damage suits could be maintained against federal officials for violations of the Constitution. 403 U.S. at 392. However, the Prison Litigation Reform Act of 1995 ("PLRA") requires a prisoner to fully exhaust all available administrative remedies before filing a Bivens action regarding prison conditions. In particular, Section 1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This statutory obligation is mandatory regardless of the remedy sought, Booth v. Churner, 532 U.S. 731, 740-41 (2001), and courts have no discretion to excuse noncompliance in actions to which the PLRA applies. Porter v. Nussle, 534 U.S. 516, 524 (2002).[11] As rationale for such a rigid prerequisite, the United States Supreme Court has stated that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and . . . 'affor[d] corrections officials time and opportunity to address

---

[11] Failure to exhaust administrative remedies is an affirmative defense, see Jones v. Bock, 549 U.S. 199, 215-16 (2007), which the defendants have properly raised in this case.

8

complaints internally before allowing the initiation of a federal case.'" Woodford v. Ngo, 548 U.S. 81, 93 (2006) (quoting Porter, 534 U.S. at 525).[12]

To satisfy the PLRA's exhaustion requirement, a prisoner must "proper[ly] exhaust" all administrative remedies available. Woodford, 548 U.S. at 93. Proper exhaustion requires a "complet[ion] [of] the administrative review process in accordance with the applicable procedural rules, including deadlines." Id. at 88, 93. It also requires a carrying out of the administrative grievance process in its entirety, including appealing any denial of relief through any appellate levels of review that are available. See Booth, 532 U.S. at 738-41.

Pursuant to 28 C.F.R. § 542.10, et seq., the Bureau of Prisons has established an administrative remedy procedure through which an inmate may seek a formal review of an issue or complaint relating to his confinement. If an inmate is unable to resolve his complaint informally, he may file a formal written complaint on the proper form to the institution in question within twenty calendar days of the date of the incident in question. See 28 C.F.R. § 542.14(a). If an inmate is not satisfied with the Warden's response to the formal complaint, he may appeal, using the appropriate form, to the Regional Office Director within twenty calendar days of the Warden's response. See 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, he may appeal the Regional Office's response to the General Counsel at the Central Office. See id. The inmate must file this final appeal within thirty calendar days of the Regional Office response. See id.[13]

The court finds that viewing the record as a whole, and in a light most favorable to Johnson, the defendants are entitled to summary judgment because no genuine issue exists

---

[12] Courts "appl[y] § 1997e(a) in the same manner to both § 1983 actions and Bivens actions." Truett v. Shaw, 17 Fed. App'x 123, 124 (4th Cir. 2001) (per curiam) (citing Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000)).
[13] The formal procedure established by regulation is reflected by the "three-level" system discussed supra note 8.

9

regarding whether Johnson properly exhausted his administrative remedies. Johnson timely submitted Administrative Remedy No. 468431 regarding the September 21, 2007 incident,[14] but the evidence establishes that that it was rejected for being sent to the wrong level of review (Regional Office instead of institution). Johnson then appealed Administrative Remedy No. 468431 to the Central Office months later in March 2008, but it was again rejected for not having first been pursued at the institution level. Johnson also included a complaint of the September 21, 2007 incident in his December 2007 appeal to the Regional Office of Administrative Remedy No. 463813, a complaint which was originally submitted August 22, 2007. The record establishes that this appeal was rejected for a number of reasons, including having been sent to the wrong Regional Office. Johnson resubmitted this same appeal to the correct Regional Office in January 2008,[15] which was again rejected for multiple reasons, among these a failure to verify why his appeal was untimely. Johnson then appealed to the Central Office in March 2008, which was rejected for having been filed at the wrong level. For these reasons, the court finds that Johnson did not properly exhaust his administrative remedies.

Though Johnson argues that he should be excused from compliance with the administrative remedy system because it was not "available" to him due to the alleged intentional acts by officers and administrators at USP Lee County (Opp. Br. at 3), the objective evidence shows otherwise. Johnson has filed over 100 administrative remedies during the course of his incarceration. In the six-month period surrounding the September 21, 2007 incident, Johnson filed 16 remedies, including multiple remedies after the incident. Thus, the record shows that

---

[14] Though no party submits evidence or specific argument regarding efforts at an informal resolution (a prerequisite to entering three-levels of formal review), the court will assume for purposes of this motion that efforts at informal resolution were pursued but unsuccessful.

[15] Resubmission of Administrative Remedy No. 463813-R2 to the correct Regional Office on January 9, 2008 (the day before commencing this lawsuit) also belies Johnson's claim that had not received a copy of prior responses related to this remedy.

Johnson had access to the administrative remedy system, and utilized it frequently. Moreover, even assuming that Johnson did not timely receive a copy of his rejection notice to Administrative Remedy No. 468431-R1, Johnson's own exhibits establish that Johnson did in fact receive this notice at some point (see Ex. 1, Attach. B to Opp. Br.), but then failed to follow the procedures to remedy the defects contained therein.

In addition, the fact that Johnson now claims that he has successfully exhausted his administrative remedies also compels the court to dismiss this action. Johnson originally filed this Bivens action on January 10, 2008. He submits records that purport to show that on September 2, 2008, he fully exhausted his administrative remedies with respect to the September 21, 2007 incident, by virtue of a response from the Central Office regarding Administrative Remedy No. 488632. That Johnson continued to pursue administrative remedies throughout 2008 illustrates that remedies were still "available" to him. Moreover, as is clear from the plain text of the PLRA, a prisoner's administrative remedies must be exhausted before instituting federal suit, not during its course. 42 U.S.C. § 1997e(a) ("No action shall be brought . . . until such administrative remedies as are available are exhausted.") (emphasis added). See also Jones v. Baker, No. 7:08cv00425, 2008 U.S. Dist. LEXIS 58132, at *2 (W.D. Va. Jul. 31, 2008) ("find[ing] that [the prisoner] had not exhausted all available administrative remedies before filing th[e] action," because the prisoner "concede[d] that he is currently 'attempting to exhaust his grievance'") (quoting complaint).[16]

---

[16] Though it appears that the Fourth Circuit has not yet squarely addressed the issue, each circuit that has recognizes that administrative remedies must be exhausted prior to filing suit. See Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003) (reversing a prior decision, and holding that the "district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred."); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002) (holding that "exhaustion prior to the commencement of the action [i]s an indispensable requirement. Exhaustion subsequent to filing suit will not suffice") (emphasis in original); McKinney v. Carey, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (affirming dismissal of inmate's complaint who was in the process of exhausting his administrative remedies); Neal v. Goord, 267 F.3d 116, 123 (2d Cir. 2001) (reasoning that

## IV.

For the reasons stated, the court finds that Johnson failed to properly exhaust his available administrative remedies before commencing this action. Therefore, the court does not reach the merits of his excessive force or deliberate indifference to serious medical need claims. Accordingly, the court will grant the defendants' motion for summary judgment for failure to exhaust, and will dismiss Johnson's claims without prejudice pursuant to 42 U.S.C. § 1997e(a). An appropriate order shall issue this day.

The Clerk of Court is directed to send a copy of this memorandum opinion and accompanying final order to plaintiff and counsel of record for defendants, and to strike this matter from the court's active docket.

ENTER: This 16th day of March, 2009.

/s/ James C. Turk
Senior United States District Judge

---

"allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court"); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001) (rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) ("[T]he plain language of [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal court.") (quotation omitted); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.") (citations omitted); Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999) ("[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intraprison remedies before judgment.").